UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

OCT 04 2005

P.M. _____
TIME A.M. _____

ORIGINAL
D&F
CIM

-------------------------------------------------------x

MARK SYRKIN,

                Plaintiff,

      -against-

STATE UNIVERSITY OF NEW YORK,
ROBERT L. KING, in his official capacity as
Chancellor of the State University of New
York, and/or his successor(s), and JOHN W.
CRAINE, JR., in his official capacity as
President or Interim President of the State
University of New York Maritime College,
and/or his successor(s),

                Defendants.

-------------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 04-CV-4336 (FB) (RML)

*Appearances:*
*For the Plaintiff:*
JAMES M. MALONEY, ESQ.
33 Bayview Avenue
Port Washington, NY 11050

*For the Defendants:*
CLEMENT J. COLUCCI, ESQ.
Assistant Attorney General
New York State Attorney General
120 Broadway, 24th Floor
New York, NY 10271

**BLOCK, District Judge:**

      Plaintiff, Mark Syrkin ("Syrkin"), sues defendants, the State University of

New York ("SUNY"), Robert L. King ("King"), and John W. Craine, Jr. ("Craine"); King and

Craine are sued only in their official capacities. Syrkin alleges that his appointment as a

professor at SUNY's Maritime College ("College") was not renewed based on unlawful

discrimination. He brings claims against all three defendants under 28 U.S.C. § 1983 and

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17.

      With regard to the Title VII claim, Syrkin seeks money damages and equitable

relief. With regard to the § 1983 claim, he seeks only equitable relief; he has further limited

his request for relief under § 1983 to "prospective relief only." Second Am. Compl. ¶ 32.[1]

Defendants have collectively moved to dismiss the § 1983 claim for failure to

state a claim and to dismiss the Title VII claim as time-barred; by order dated August 30,

2005, the Court gave notice of its intent to treat the motion as a motion for summary

judgment as to the latter issue. For the following reasons, the Court concludes (1) with

respect to the § 1983 claim, that Syrkin has stated a claim for prospective injunctive relief

against King and Craine in their official capacities, but that SUNY is not amenable to suit;

and (2) with respect to the Title VII claim, that the claim is time-barred.

## MOTION TO DISMISS § 1983 CLAIM

### I.

"In considering a motion to dismiss for failure to state a claim, a district court

must limit itself to the facts stated in the complaint, documents attached to the complaint

---

[1]The scope of the prospective equitable relief sought is unclear; the *ad damnum* clause of the complaint seeks "such equitable [relief] as may be appropriate," including – but not necessarily limited to – "an injunction ordering the Plaintiff be reinstated to his former position[.]" Second Am. Compl. at 7. The Court notes that, with respect to Syrkin's § 1983 claim, "[t]he request that [he] be reinstated to his position is not barred by the Eleventh Amendment. Reinstatement is purely prospective injunctive relief that orders the state official to return the former employee to the state's payroll." *Dwyer v. Regan*, 777 F.2d 825, 836 (2d Cir. 1985). By contrast, the amendment would bar the equitable remedies of back pay, *see id.*, and front pay. *See Campbell v. Arkansas Dep't of Corr.*, 155 F.3d 950, 962 (8th Cir. 1998) ("For purposes of the [Eleventh Amendment], front pay is not analogous to the prospective relief permitted under *Ex parte Young* because it 'must be paid from public funds in the state treasury.'" (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974))); *accord Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996); *Freeman v. Michigan Dep't of State*, 808 F.2d 1174, 1179 (6th Cir. 1987). Based upon these limitations, the Court will refer to the relief sought under § 1983 as "prospective injunctive relief."

as exhibits and documents incorporated by reference in the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). The Court "take[s] as true all of the allegations contained in plaintiff's complaint and draw[s] all inferences in favor of plaintiff." *Weinstein v. Albright*, 261 F.3d 127, 131 (2d Cir. 2001). The following is therefore taken from Syrkin's Second Amended Complaint and the exhibits thereto:

Syrkin is a Jewish male of Russian national origin. In 1990, he was hired by the College as an adjunct assistant professor of physics in the College's Science Department; in 1996, he was promoted to assistant professor. His employment was based on an appointment to a fixed term that was renewed from time to time; the most recent renewal was set to expire on August 31, 2003.

On April 15, 2002, the chairperson of the Science Department recommended to Craine, the College's interim president, that Syrkin be promoted to associate professor and given a "continuing appointment," which would be tantamount to a grant of tenure. *See* N.Y. Comp. Codes R. & Regs. tit. 8, § 335.2 ("A continuing appointment shall be an appointment to a position of academic rank which shall not be affected by changes in such rank and shall continue until resignation, retirement or termination.").

On May 6, 2002, non-defendant Jeffrey A. Weiss ("Weiss"), the College's interim provost, recommended to Craine that Syrkin's appointment not be renewed; the rationale for Weiss's recommendation was as follows:

> The Science Department offers courses in Mathematics,
> Physics, Chemistry, and Meteorology, among other disciplines.
> The College's Marine Environmental Science (MES) degree
> program is offered by the Science Department.

> The MES degree program has historically graduated a disproportionately small number of undergraduate students. This trend continues. This is despite the fact that the Science Department incurs very substantial personnel service expenses. By way of example, the Science Department's personnel service expenses for fiscal year 2001-2002 was one of the largest at the College.
>
> The College is faced with the challenge of supporting numerous programs, despite limited financial resources. In view of this programmatic challenge, and overall pressing financial issues, I respectfully submit that the College should not continue to support an additional full time faculty member in the Science Department.

Second Am. Compl., Ex. 2. On May 9, 2002, Weiss advised Syrkin by letter that Craine had "decided not to renew your term appointment past its current expiration date of August 31, 2003." *Id.*, Ex. 3.

The collective bargaining agreement ("CBA") between SUNY and his union gave Syrkin the right to seek review of Craine's decision. On May 29, 2002, Syrkin invoked the review process, which took place in two stages: First, Chancellor King appointed a three-member, *ad hoc* Chancellor's Advisory Committee ("Chancellor's Committee"). On November 14, 2002, the Chancellor's Committee issued a report concluding that Craine's decision not to renew Syrkin's appointment could not be justified on budgetary and programmatic grounds, and unanimously recommended that the decision be reversed. The report noted that Syrkin was "'not a member of the MES faculty, a concept that was fully misunderstood by [Weiss] in making his recommendation.'" Second Am. Compl. ¶ 18 (quoting *id.*, Ex. 4).

Second, Chancellor King reviewed Craine's decision and the report and

recommendation of the Chancellor's Committee. On May 5, 2003, he sent Syrkin a letter informing him that "it is my conclusion that Interim President Craine has taken a reasonable and defendable action in your situation, and I, therefore, affirm his decision." *Id.*, Ex. 5.

Despite Weiss' recommendation that "the College should not continue to support an additional full time faculty member in the Science Department," *id.*, Ex. 2, in May 2003, the College renewed the appointment of a currently employed, American-born female professor in the Science Department and recommended her for tenure, which she received in June 2003. The College also hired an additional female professor for the Science Department. Both of these professors were "substantially younger" than Syrkin. *Id.*, Ex. 6.[2]

In addition to the facts set forth above, the Second Amended Complaint alleges that "Defendants' termination of [his] employment was based on one or more improper criteria, including [] sex, age, religion, national origin, and/or protected speech" in violation of his rights under the Equal Protection Clause of the Fourteenth Amendment. Second Am. Compl. ¶ 30.

## II.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Where, as here, the alleged violation concerns the Equal Protection Clause, the plaintiff must allege intentional discrimination by a government actor on the

---

[2]In no version of his complaint does Syrkin allege his age.

basis of impermissible criteria. *See Hayden*, 180 F.3d at 48 ("[Plaintiffs] must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender."); *see also Crowley v. Courville*, 76 F.3d 47, 52-53 (2d Cir. 1996) (classifying as "impermissible considerations" "race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.").

As previously explained, *see supra* note 1, the Eleventh Amendment limits Syrkin's relief under § 1983 to prospective injunctive relief. In addition, the amendment bars a claim for even that relief against SUNY. *See Dube v. State Univ. of New York*, 900 F.2d 587, 594 (1990) ("For Eleventh Amendment purposes, . . . when [SUNY] is sued the State is the real party. . . .Thus, no relief, either legal or equitable, is available against SUNY."). Furthermore, Syrkin cannot state a § 1983 claim against SUNY because "the State University is not a 'person' within 42 U.S.C. § 1983," *Blanton v. State Univ. of N.Y.*, 489 F.2d 377, 382 (2d Cir. 1973); this is true even though he seeks only prospective injunctive relief. *See Gaby v. Board of Trustees*, 348 F.3d 62, 63 (2d Cir. 2003) (holding that state college board of trustees "is not a 'person' subject to suit under § 1983," even though plaintiff sought "only prospective injunctive relief," and citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)).

"On the other hand, a state official acting in his official capacity may be sued in a federal forum to enjoin conduct that violates the federal Constitution, notwithstanding the Eleventh Amendment bar." *Dube*, 900 F.2d at 595. There is, moreover, no dispute that Craine and King, who are sued in their official capacities, are "person[s] acting under color of state law" under § 1983 for purposes of prospective injunctive relief. *See Will*, 491 U.S.

6

at 71 n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983[.]").[3]

Defendants argue, however, that Syrkin has failed to allege intentional discrimination. That argument is plainly refuted by paragraph 30 of the Second Amended Complaint, alleging that "[d]efendants' termination of my employment was based on one or more improper criteria, including [] sex, age, religion, national origin, and/or protected speech," and the specific factual allegations of the complaint and the exhibits attached thereto. Those factual allegations include the circumstances surrounding the non-renewal of Syrkin's appointment; the possible pretextual nature of the reasons given for Craine's decision; the College's subsequent recommendation of tenure for one of Syrkin's female, American-born colleagues; and the hiring of a new female professor for the Science Department. These allegations are sufficient to give defendants "'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41 (1957)); *see also Straker v. Metropolitan Transit Auth.*, 333 F. Supp. 2d 91, 99 (E.D.N.Y. 2004).

Defendants argue that Syrkin's allegations "set forth the position that [Weiss] made the initial recommendation for nonrenewal because he 'fully misunderstood' that 'Plaintiff is not a member of the MES faculty,' a reason which has nothing to do with

---

[3]Although Syrkin does not seek money damages on his § 1983 claim, the Court notes that such relief would not be available against either SUNY or King and Craine in their official capacities. *See Yorktown Med. Lab., Inc. v. Perales*, 948 F.2d 84, 87 n.1 (2d Cir. 1991) ("[N]either a state nor state officials sued in official capacity for monetary damages are 'persons' for the purposes of section 1983." (citing *Will*, 491 U.S. at 70-71)).

discrimination," Defs.' Mem. of Law, at 5-6 (quoting Second Am. Compl. ¶ 18); in other words, they claim that Syrkin has alleged that the non-renewal of his appointment was the result of a mistake, not of intentional discrimination.

The allegation defendants quote, however, does not purport to state Syrkin's position regarding the reason for the non-renewal of his appointment; rather, it refers to the conclusion of the Chancellor's Committee that the reasons given for the non-renewal did not justify the decision because "Plaintiff 'is not a member of the MES faculty, a concept that was fully misunderstood by [Weiss] in making his recommendation.'" Second Am. Compl. ¶ 18 (quoting the Chancellor's Committee's report). Read in the light most favorable to Syrkin, the allegation suggests that those reasons were pretextual.

In sum, the Second Amended Complaint fails to state a § 1983 claim for a violation of the Equal Protection Clause against SUNY; it does, however, state such a claim for prospective injunctive relief against King and Craine in their official capacities.

## MOTION FOR SUMMARY JUDGMENT ON TITLE VII CLAIM

### I.

In respect to the defendants' motion to dismiss Syrkin's Title VII claim as time-barred, a district court must grant summary judgment "whenever it determines that there is no genuine issue of material fact to be tried." *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). In considering a motion for summary judgment, the Court

8

must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 255). The following undisputed facts are relevant to the timeliness issue:

After receiving Weiss' May 9, 2002 letter advising him that Craine had decided not to renew his appointment, Syrkin asked Craine for a written statement of the reasons for his decision. By letter dated May 17, 2002, Craine responded, telling Syrkin, "I fully concur with Professor Weiss' recommendation, and the reasons for your non-renewal set forth therein. My decision not to renew your contract on a continuing appointment basis arises out of the College's overall programmatic needs." Spann Dec., Ex. 2. The letter also informed Syrkin of his right under the CBA to ask Chancellor King to review the decision.

For approximately the next two weeks, Syrkin attempted to meet with Craine to discuss the decision and, specifically, to point out that most of the courses he taught were not tied to the MES program; he also wanted to question Weiss' conclusion that the Science Department could not financially support his continued appointment. At the time, he "had no idea that," as he now claims, "[his] dismissal was an act of discrimination based on religion, national origin, or gender." Syrkin Dec. ¶ 13.

Syrkin's attempts to meet with or speak to Craine were unsuccessful; each time he tried, he "was given various reasons for [Craine's] unavailability by his secretary." *Id.* ¶ 14. He did, however, meet with Dr. Kimberly Cline ("Cline"), the College's Vice President for Administrative Affairs. Cline told Syrkin that she had no control over the faculty appointment process, but assured him that the decision was based on the College's

9

financial situation. She also told Syrkin that Craine's decision was "not by any means final" because it might be reversed by the chancellor. *Id.* ¶18.

As previously mentioned, on May 29, 2002, Syrkin invoked his right under the CBA to ask Chancellor King to review Craine's decision. The review process concluded on May 5, 2003, when King sent Syrkin a letter "affirm[ing] [Craine's] decision." Second Am. Compl., Ex. 5.

On July 18, 2003, Syrkin filed a charge with the Equal Employment Opportunity Commission ("EEOC"), claiming that the non-renewal of his appointment had been based on his sex, religion, national origin and age. The College responded to the merits of the charge; it did not assert that it was untimely.

On July 13, 2004, the EEOC issued a determination that there was reasonable cause to believe that the non-renewal of Syrkin's appointment had been based on unlawful discrimination and invited the parties to attempt to resolve the matter through informal conciliation; the EEOC made no *sua sponte* finding regarding the timeliness of Syrkin's charge.

When attempts at conciliation proved unsuccessful, the EEOC issued Syrkin a right-to-sue letter on September 28, 2004. Syrkin filed suit in this Court on October 4, 2004.

## II.

In New York, a Title VII claimant must file an administrative charge with the EEOC within 300 days of the alleged discriminatory act in order to preserve his or her right to bring a lawsuit. *See* 42 U.S.C. § 2000e-5(e)(1); *Harris v. City of New York*, 186 F.3d 243, 247

10

n.2 (2d Cir. 1999). "Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

Defendants argue that Syrkin did not meet the 300-day deadline. That argument presents two issues: (1) the date the 300-day period began to run, and (2) whether Syrkin can be relieved from the time bar.

## A. Start of the 300-Day Period

For a claim of discriminatory discharge, the 300-day period begins to run "on the date when the employee receives a definite notice of the termination, not upon his discharge." *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 23 (2d Cir. 1985). "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980).

To start the 300-day period, the notice must state the "official position" of the decision-maker. In *Ricks*, for example, the plaintiff – a college professor – alleged that a college had denied him tenure on the basis of his national origin. *See* 449 U.S. at 254. The Court approved the district court's conclusion that "the limitations periods had commenced to run by June 26, 1974, when the President of the Board [of Trustees of the college] notified Ricks that he would be offered a 'terminal' contract for the 1974-1975 school" because, by that date, "the College had established its official position." *Id.* at 506.

That the decision "is subject to a grievance procedure, administrative review,

and possible reversal" does not delay the start of the 300-day period. *Joseph v. New York City Bd. of Educ.*, 171 F.3d 87, 91 (2d Cir. 1999). As the Supreme Court noted in *Ricks*, "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." 449 U.S. at 261 (citing *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229 (1976)).

Here, Syrkin received notice that his appointment would not be renewed on May 9, 2002, when Weiss advised him that Craine had "decided not to renew your term appointment past its current expiration date of August 31, 2003," Second Am. Compl., Ex. 3; the termination decision was confirmed on May 17, 2002, when Craine gave Syrkin the reasons for his decision.

Syrkin argues that the decision not to renew his appointment was not official until Chancellor King affirmed Craine's decision. This is incorrect. Under the Policies of the Board of Regents of SUNY, the authority to make and renew term appointments like Syrkin's resides with the presidents of the individual colleges. *See* N.Y. Comp. Codes R. & Regs. tit. 8, § 335.12 ("All term appointments shall be made by the chief administrative officer of the college and shall be reported to the chancellor."); *id.* § 335.13 ("Except as provided in this Part, term appointments may be renewed by the chief administrative officer of the college for successive periods of not more than three years each[.]"); *id.* § 335.14 ("In the event a term appointment is not to be renewed upon expiration, the chief administrative officer or the chief administrative officer's representative will notify the appointee in writing[.]"). Thus, Craine's decision stated an "official position."

In light of Craine's authority, the Chancellor's review provided for in the

CBA can only be described as "collateral review of an employment decision" that had already been made. *Ricks*, 449 U.S. at 261 ("[E]ntertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a remedy for a prior decision, not an opportunity to *influence* that decision before it is made."). As explained above, such review procedures do not delay the start of the 300-day period.

Syrkin contends that the non-renewal of his appointment was part of a "continuous policy and practice of increasing the number of female professors in the Science Department," Pl.'s Mem. of Law, at 11; therefore, he argues, the time for filing his EEOC charge did not begin to run until the completion of the last act in furtherance of that policy. According to Syrkin, the last such act was either the recommendation of tenure for a female professor in May 2003 or the hiring of an additional female professor in September 2003.

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), forecloses this argument. There, the Supreme Court held that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." 536 U.S. at 110. The Court explicitly mentioned termination as an example of a discrete act. *See id.* at 114 ("Discrete acts such as *termination*, failure to promote, denial of transfer, or refusal to hire are easy to identify." (emphasis added)).

Thus, the 300-day period began to run on May 9, 2002; at the latest, it began on May 17, 2002. Even using the latter date, Syrkin's EEOC charge was filed 427 days after

the period began; therefore, it was untimely.

## B. Relief from the Time-Bar

The doctrines justifying relief from a time bar – waiver, estoppel and equitable tolling – "are to be applied sparingly." *Morgan*, 536 U.S. at 113. Syrkin nevertheless argues that each of them applies in this case.

### 1. *Waiver/Estoppel*

Syrkin argues that defendants' failure to raise the timeliness issue before the EEOC constitutes a waiver of the issue or, alternatively, estops them from asserting it.

With respect to waiver, the case law is sparse. In *Mercado v. Ritz-Carlton*, 410 F.3d 41 (1st Cir. 2005), the First Circuit recently held that an employer did not waive its timeliness objection by failing to raise it before the EEOC where the EEOC did not make an express finding of timeliness *or* reach the merits of the plaintiffs' claims; however, the court did not address whether it would have found a waiver if the EEOC had reached the merits. *See id.* at 45. Since the EEOC did reach the merits of Syrkin's claims, *Mercado* is not exactly on point; its reasoning is nevertheless instructive because the First Circuit analyzed the waiver issue as it applies to employment discrimination claims against federal agencies, and applied the same principles to non-federal employers. *See id.*

Unlike other employers, federal agencies are required to establish procedures for internally investigating discrimination complaints by their employees, *see Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001); these procedures, which include time limits for filing internal complaints, result in a final agency decision which may be appealed to the EEOC. *See* 29 C.F.R. § 1614.401. The employee has 90 days from the date of the federal employer's

14

decision or, if there has been an appeal to the EEOC, from the date of the EEOC's decision, to file suit in district court. *See* 42 U.S.C. § 2000e-16(c). As with the 300-day period applicable to claims against employers in general, these time limits are "analogous to a statute of limitations and [are], therefore, considered subject to waiver, estoppel, and equitable tolling." *Briones v. Runyon*, 101 F.3d 287, 290 (2d Cir. 1996).

It is a "well-settled rule that federal agencies do not waive a timeliness defense merely by accepting and investigating a discrimination complaint." *Mercado*, 410 F.3d at 45 (collecting cases) (citations and internal quotation marks omitted); *see also Belgrave v. Pena*, 254 F.3d 384, 387 (2d Cir. 2001) (adopting the rule in the Second Circuit). Rather, a federal agency waives the defense only "by making an express finding that the complaint was timely or failing to appeal an EEOC determination of timeliness." *Bruce v. United States Dep't of Justice*, 314 F.3d 71, 74 (2d Cir. 2002) (citing *Rowe v. Sullivan*, 967 F.2d 186 (5th Cir. 1992)). The implicit distinction between *Belgrave* and *Bruce* is that the federal agency must take some affirmative action (either by making its own finding or accepting the EEOC's finding) before it will be deemed to have waived the timeliness issue.

Moreover, at least one court had concluded that the non-adversarial, non-binding nature of EEOC proceedings means that an employer's failure to raise the timeliness issue before the EEOC cannot have the binding effect of a waiver. *See Byrnes v. Herion, Inc.*, 757 F. Supp. 648, 653 (W.D. Penn. 1990) ("[W]e are unable to find any authority for the proposition that a waiver under these circumstances would be appropriate.").

Here, defendants did not explicitly take any binding position (by stipulation, admission or otherwise) regarding the timeliness issue; as a result, the EEOC made no

finding that Syrkin's charge was timely. In the absence of any such affirmative action by either defendants or the EEOC, and considering the non-binding nature of EEOC proceedings, the Court declines to hold that defendants waived their right to raise the timeliness issue.

With respect to estoppel, Syrkin would have to show that "(1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995).[4] Even assuming defendants' failure to raise the timeliness issue before the EEOC could constitute such a misrepresentation, *see Veltri v. Building Serv. 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004) ("Silence may in some cases be sufficient to establish a misrepresentation."), Syrkin cannot establish that he reasonably relied on it to his detriment. By the time the EEOC proceedings began, the 300-day period had already expired; Syrkin cannot logically contend that, had the issue been raised before the EEOC, he could have somehow retroactively cured the defect.

## 2. Equitable Tolling

Syrkin argues that equitable tolling should apply because he did not learn of the alleged discriminatory motive for the non-renewal of his appointment until his female

---

[4]Though related, waiver and estoppel rely on different concepts: "Waiver is a voluntary relinquishment or abandonment by a party of some right or advantage, while the doctrine of estoppel holds that a party may be precluded by his or her conduct from asserting a right to the detriment or prejudice of another party." N.Y. Jur. *Estoppel* § 75. Thus, waiver focuses on "what a party intends to do," while estoppel focuses on "reliance by the party asserting it." *Id.*

colleague was given tenure in May 2003 and a female professor was hired for the Science

Department in September 2003. It is clear, however, that the 300-day time limit is "not

tolled or delayed pending the employee's realization that the conduct was discriminatory

unless the employee was actively misled by his employer, he was prevented in some

extraordinary way from exercising his rights, or he asserted his rights in the wrong forum,

in which event tolling of the time bar might be permitted as a matter of fairness." *Miller*,

755 F.2d at 24. "An 'extraordinary' circumstance permitting tolling of the time bar on

equitable grounds might exist if the employee could show that it would have been

impossible for a reasonably prudent person to learn that his discharge was discriminatory."

*Id*. As this Court has had occasion to note, "courts in the Second Circuit have construed

the 'extraordinary circumstance' language of *Miller* narrowly[,] and have refused to apply

equitable tolling where the claimant contends that he or she discovered the alleged

discriminatory motive for the employer's act years later, based upon the employer's

treatment of other employees." *Jones v. Long Island R.R. Co.*, 1998 WL 221365, at *3

(E.D.N.Y. 1998).

Syrkin argues that equitable tolling should apply because the reasons given

for the non-renewal of his appointment were pretextual. Courts have regularly held that

"the fact that defendants may have provided other reasons for the employment actions

does not justify an inference that plaintiff was misled." *Gray v. Shearson Lehman Bros., Inc.*,

947 F. Supp. 132, 135 (S.D.N.Y. 1996); *see also Meyers v. IBM Corp.*, 335 F. Supp. 2d 405, 411

(S.D.N.Y. 2004) (holding that alleged pretext of lack of training did not warrant equitable

tolling); *Wall v. National Broadcasting Co., Inc.*, 768 F. Supp. 470, 475 (S.D.N.Y. 1991) (holding

that alleged pretext of downsizing did not warrant equitable tolling). To hold otherwise would allow the exception of equitable tolling to swallow the rule of *Miller* that an employee's awareness of a discriminatory motive has no bearing on the 300-day period.

Syrkin also argues that equitable tolling should apply because Cline told him that Craine's decision was not final in that it might be reversed by Chancellor King. This, too, is insufficient to constitute an "extraordinary circumstance." In *Ricks*, the letter informing the plaintiff of the decision not to grant tenure expressly noted that it might be superseded pending the outcome of his request for further review, *see* 449 U.S. at 261 ("It is apparent, of course, that the Board in its June 26 letter indicated a willingness to change its prior decision if Ricks' grievance were found to be meritorious."); the Supreme Court nevertheless rejected the argument that this "should toll the running of the limitations periods." *Id.*

More generally, Syrkin cannot demonstrate "extraordinary circumstances" because, as alleged in the complaint, he immediately questioned the validity of the budgetary and programmatic concerns given as reasons for Craine's decision; therefore, he could have at least suspected that these were not the true reasons, and acted to preserve his rights by filing an EEOC charge. *See Fausto v. Reno*, 955 F. Supp. 286, 292 (S.D.N.Y. 1997) ("Once an adverse employment action has been taken . . ., a plaintiff is on notice and has an obligation to investigate further in order to safeguard his rights." (citation and internal quotation marks omitted)); *Grosso v. Queens College*, 2004 WL 583767, at *5 ("Plaintiff's suspicion could have easily been aroused by the thin excuses for continually

undelivered promises he recounts in his Amended Complaint.").[5]

## CONCLUSION

The motion to dismiss Syrkin's § 1983 claim is granted as to SUNY, but denied as to Craine and King in their official capacities. The motion for summary judgment to dismiss Syrkin's Title VII claim is granted as to all defendants.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Brooklyn, New York
September 29, 2005

---

[5]Even if Syrkin's EEOC charge had been timely filed, his Title VII claim would not be viable against Craine and King. *See Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir. 2000) ("[I]ndividuals are not subject to liability under Title VII.").